UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Paul Porcher, Jr.,<br>Plaintiff,<br><br>v.<br><br>South Atlantic and Gulf Coast District, International Longshoremen's Association Atlantic, LLC, International Longshoreman's Association Local 1422,<br>Defendants. | CASE NO.: 2:26-cv-<br><br>**COMPLAINT**<br>**(Jury Trial Requested)** |

## JURISDICTION AND PARTIES

1. This suit is brought and jurisdiction lies pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq. (hereinafter "ADA"), including Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates the powers, remedies, and procedures of §706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a)(4).

2. Venue is proper in the Charleston Division pursuant to 42 U.S.C. §2000e-5(f)(3), as incorporated by 42 U.S.C. §12117(a), and 28 U.S.C. §1391(b), because the unlawful employment practices alleged herein were committed in Charleston County, South Carolina, the seniority records at issue are maintained and administered in Charleston County, and Plaintiff would work in Charleston County but for those practices.

3. All administrative prerequisites to suit under the ADA and §706 of Title VII, 42 U.S.C. §2000e-5, as incorporated by 42 U.S.C. §12117(a), have occurred or been complied with.

   a. On or about April 10, 2026, Plaintiff timely filed Charges of Discrimination alleging disability discrimination with the Equal Employment Opportunity Commission ("EEOC"), dual-filed with the South Carolina Human Affairs Commission, including Charge No. 415-2026-01463 against South Atlantic ILA (SAGCD) and Charge No. 415-2026-01462 against Local 1422, ILA. Plaintiff filed amended charges on or about May 13, 2026.

   b. The EEOC issued a Determination and Notice of Rights as to Charge No. 415-2026-01463 on August 17, 2026, and as to Charge No. 415-2026-01462 on September 8, 2026, which Plaintiff received on or about those dates.

   c. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of each Notice of Right to Sue.

d. The Charges were filed within three hundred (300) days of the discriminatory acts on which this action is based, including Defendants' refusals to restore Plaintiff's seniority on or about October 1, 2025, and on December 22, 2025.

4. Plaintiff, Paul Porcher, Jr., is a citizen and resident of Charleston County, South Carolina.

5. Defendant South Atlantic and Gulf Coast District, International Longshoremen's Association Atlantic, LLC (hereinafter "SAGCD"), upon information and belief, is an unincorporated labor organization headquartered in Jacksonville, Florida, that serves as the intermediate district organization of the International Longshoremen's Association for the ILA locals from North Carolina to Texas, including ILA Local 1422 in Charleston, South Carolina, and that conducts business in this judicial district.

6. Defendant International Longshoremen's Association, Local 1422 (hereinafter "ILA Local 1422"), upon information and belief, is an unincorporated labor organization and the local union of the International Longshoremen's Association representing longshoremen in the Port of Charleston, with its principal office in North Charleston, Charleston County, South Carolina. ILA Local 1422 is a constituent local union within SAGCD.

7. All discriminatory employment practices alleged herein were committed within the State of South Carolina.

8. Each Defendant is a "person" within the meaning of §701(a) of Title VII, 42 U.S.C. §2000e(a), as incorporated by 42 U.S.C. §12111(7).

9. Each Defendant is a "labor organization" engaged in an industry affecting commerce within the meaning of §701(d) and (e) of Title VII, 42 U.S.C. §2000e(d)-(e), as incorporated by 42 U.S.C. §12111(7). Upon information and belief, each Defendant has fifteen (15) or more members, and ILA Local 1422 represents longshoremen in the Port of Charleston for purposes of collective bargaining.

10. Each Defendant is a "covered entity" within the meaning of Section 101(2) of the ADA, 42 U.S.C. §12111(2), which expressly includes labor organizations and joint labor-management committees.

11. The parties, matters and all things and matters hereinafter alleged are within the jurisdiction of the Court.

## STATEMENT OF FACTS

12. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

13. Plaintiff is a longshoreman and a member of ILA Local 1422. He began working in the longshore industry in the Port of Charleston on or about February 9, 2003, and at all times was effective and efficient in his work.

14. Plaintiff worked in the industry until 2009, and had attained seniority classification N04. In 2009, Plaintiff's medical conditions, including type II diabetes with episodes of hypoglycemia, obesity, gout, and arthritis, rendered him unable to safely perform longshore work, including driving trucks and other vehicles on the marine terminals.

15. Plaintiff's absence from the industry was caused by illness and was not voluntary. It was an allowable break in service for which the seniority plan provides credit, and for which the Seniority Board had the power to grant continuous service. During his absence, Plaintiff obtained medical treatment for his conditions.

16. Plaintiff returned to longshore work in the 2022 contract year and has since worked as a truck driver under the collective bargaining agreement and seniority plan administered by Defendants. Plaintiff can, and does, perform the essential functions of his position.

17. Defendants, together with the employers in the Port of Charleston, maintain and administer a seniority system based on an individual's time in the industry. Seniority classification dictates the amount of work available to a longshoreman, and therefore the hours, wages, and pension and welfare credits he receives.

18. Seniority classifications and appeals in the Port of Charleston are decided by the Charleston (Port) Seniority Committee (the "Committee"), which, upon information and belief, is the Seniority Board referred to in the seniority plan. The Committee is a joint labor-management committee whose decisions are issued and signed both "[f]or and on behalf of Management" and "[f]or and on behalf of ILA Local 1422," the latter by the President of ILA Local 1422. Upon information and belief, SAGCD, as the district organization over ILA Local 1422, is a party to, administers, and/or enforces the collective bargaining agreement and seniority plan under which the Committee acts.

19. The seniority plan expressly provides that employees may receive credit for allowable breaks in service due to "[i]njury or illness to the extent of becoming eligible for workman's compensation or for benefits under the Employers I.L.A. Welfare Plan." (Seniority Plan §5(b)(1)). The plan further provides that the Seniority Board "shall have the power, for good cause, to grant one or more years of continuous service to individuals who have failed to maintain continuous service because of no fault of their own, or to correct the seniority status of an individual who is incorrectly classified." (Seniority Plan §5(d)).

20. Upon Plaintiff's return to the industry, Defendants placed him in a lower classification rather than restoring his N04 classification. On or about May 24, 2023, Plaintiff submitted a Seniority Review Form seeking restoration of his seniority, which would credit his past service rather than treat him as a new employee with no seniority. He explained that his absence was caused by illness, that he had not quit the industry, and that he had documentation from his physicians.

21. On August 22, 2023, the Committee heard Plaintiff's appeal. The Committee's hearing notes record that Plaintiff was diabetic; had gout, arthritis, and hypoglycemia; had a family history

of diabetes; and had believed he could not safely drive trucks and cars because of his condition. Rather than apply the plan's illness-credit provisions, the Committee tabled Plaintiff's appeal, fixed his seniority at P22 for the remainder of the 2023 contract year, and required him to provide additional medical evidence of his treatment starting in 2010 and of his medical issues before 2010.

22. On or about October 1, 2025, Plaintiff submitted a further Seniority Review Form, on an ILA Local 1422 form directed to ILA Local 1422's Recording Secretary, again seeking restoration of his seniority to his original 2003 seniority date, explaining that his absence from the industry was due to medical reasons, and stating that he would present his medical records. On or about October 1, 2025, Defendants refused to advance or restore Plaintiff's seniority classification.

23. On December 22, 2025, following a further appeal hearing before the Committee, Defendants again refused to restore or advance Plaintiff's seniority classification. At that hearing, Jason Douglas, a member of the Committee and Executive Director of the South Carolina Stevedores Association, told Plaintiff that he would not reclassify Plaintiff with seniority because of Plaintiff's diabetes, and stated that Plaintiff could have managed his diabetes better through lifestyle decisions. Representatives of ILA Local 1422 sat on the Committee and joined in, ratified, and/or acquiesced in that decision.

24. Defendants applied the seniority plan more favorably to members without disabilities. On December 9, 2025, less than two weeks before Plaintiff's hearing, the Committee restored the seniority of numerous members through the seniority review process, including Raymond Venning III, a truck driver without a disability, who was restored to classification P21 even though he had not met the plan's hours requirement.

25. Plaintiff has satisfied the requirements for reclassification under the seniority plan, and his absence from the industry was caused by illness through no fault of his own. Defendants refused to credit his service or restore his classification because of his disability, his record of disability, and their perception that his diabetes rendered him unable to work safely.

26. Plaintiff's compensation has thus been reduced, hours lessened, and benefits, including retirement, are lower than the amounts they otherwise would be had Plaintiff been placed at N04 status.

27. Defendants continue to refuse to reclassify Plaintiff, and Plaintiff continues to work, be paid, and be credited for pension and welfare benefits at a lower classification than he would hold but for his disability.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12112**
**(Against All Defendants)**

28. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

29. Plaintiff is an individual with a disability within the meaning of 42 U.S.C. §12102(1). His insulin-dependent diabetes, chronic kidney disease, rheumatoid arthritis, and related conditions

substantially limit major life activities, including the operation of major bodily functions such as endocrine, renal, immune, and musculoskeletal functions, without regard to the ameliorative effects of mitigating measures such as insulin and other medication. 42 U.S.C. §12102(2), (4)(E).

30. Plaintiff also has a record of such impairments, 42 U.S.C. §12102(1)(B), and Defendants regarded him as having such impairments, 42 U.S.C. §12102(1)(C), (3), as reflected in the Committee's hearing notes and Mr. Douglas's statements.

31. Defendants discriminated against Plaintiff on the basis of disability in regard to the terms, conditions, and privileges of employment, in violation of 42 U.S.C. §12112(a) and (b), including by (a) limiting and classifying Plaintiff in a way that adversely affects his opportunities and status because of his disability, §12112(b)(1); (b) participating in a contractual or other arrangement, including the collective bargaining agreement, seniority plan, and Committee process, that has the effect of subjecting Plaintiff to discrimination, §12112(b)(2); and (c) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability, §12112(b)(3).

32. Plaintiff is a qualified individual within the meaning of 42 U.S.C. §12111(8) because he can perform the essential functions of his position, and has done so since his return to work.

33. Defendants' actions were intentional and were taken with malice or reckless indifference to Plaintiff's federally protected rights.

34. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer lost wages, lost work hours, lost pension, welfare, and other benefit credits, emotional distress, and mental anguish. Plaintiff is entitled to reclassification and other equitable relief, back pay with interest, front pay, compensatory and punitive damages pursuant to 42 U.S.C. §1981a, and attorney's fees and costs pursuant to 42 U.S.C. §12205.

## RELIEF REQUESTED

Plaintiff requests a judgment by this Court against Defendants as follows:

1. Judgment in favor of the Plaintiff and against Defendants for all causes of action;

2. A declaration that Defendants' refusal to restore and advance Plaintiff's seniority classification violated the ADA;

3. An injunction requiring Defendants to restore Plaintiff to seniority classification N04, or to such classification as he would hold absent discrimination, retroactive to October 1, 2025; to correct all associated seniority, hours, pension, welfare, and vacation and holiday records and credits; and to refrain from further discrimination against Plaintiff on the basis of disability;

4. An Order that Plaintiff be awarded the back pay he would have earned, with related monetary benefits and interest thereon, had he been properly classified, attorney fees and costs of this action and all other remedies allowable by statute or otherwise;

5. Judgment in favor of the Plaintiff and against Defendants for front pay and any other work benefits he lost in an amount to be determined by the trier of fact;

6. An award to the Plaintiff for punitive damages in an amount to be determined at the trial of this matter;

7. Compensatory damages for emotional distress, mental anguish, and other non-pecuniary losses;

8. An award of Plaintiff's attorney fees, including litigation expenses, and the costs of this action; and

9. For such other and further relief as this Court deems just and proper and allowable remedies by statute, case law or otherwise.

Plaintiff demands a trial by jury on all issues so triable.

**WIGGER LAW FIRM, INC.**

*s/Charles W. Neely*
Charles W. Neely (Fed. I.D. #12913)
Attorney for Plaintiff
8086 Rivers Avenue, Suite A
N. Charleston, SC 29406
843-553-9800
cneely@wiggerlawfirm.com

North Charleston, South Carolina
November 11, 2026